UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X
Seiran Salimov,
                Plaintiff,

                                       Case No.: 24-9596

v.

                                       **JURY TRIAL DEMANDED**

The Bank of New York Mellon
Corporation,
                Defendant.
-------------------------------------------X

## INTRODUCTION

1.     Plaintiff Seiran Salimov ("Plaintiff") is a survivor of the September 11, 2001 terrorist attacks and has been certified as having a 9/11 related cancer through the World Trade Center Health Program. As a result of his condition, Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2.     Plaintiff brings this action against Defendant The Bank of New York Mellon Corporation ("Defendant") for unlawful discrimination and retaliation in violation of the ADA and its state and city statutory counterparts. Throughout his tenure, Plaintiff was an exceptional employee with close to 30 years of experience in the Information Technology field. Plaintiff was employed by Defendant for over two years and had a stellar record with consistently high performance reviews. Despite Plaintiff's protected status and his ability to perform the essential functions of his position, Defendant and its employees engaged in a pattern of discriminatory conduct and retaliation against Plaintiff based on his disability.

3. Defendant's discriminatory actions included, but were not limited to, interfering with Plaintiff's ability to enjoy his workplace accommodation, denying Plaintiff a salary increase, and wrongfully terminating Plaintiff's employment.

4. As a direct result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer significant damages, including loss of employment, income, benefits, and emotional distress.

5. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees and costs as remedies for Defendant's violations of his rights under the ADA, 42 U.S.C. § 12101, *et seq.*; the New York State Human Rights Law, New York State Executive Law § 296, ("NYSHRL"); and the New York City Human Rights Law, NYC Administrative Code § 8-107 ("NYCHRL").

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is a resident of the State of New York.

7. Defendant is a corporation that is headquartered and registered to do business in the State of New York and lists its address in New York City at 240 Greenwich Street, New York, N.Y. 10286.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the federal claims herein arise under the ADA, 42 U.S.C. §§ 12101, *et seq.*

9. This Court has supplemental jurisdiction over the claims Plaintiff brings under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the subject matter of this action occurred within the Southern District of New York.

## FACTUAL BACKGROUND

11. Plaintiff is a survivor of the September 11, 2001 terrorist attacks and is certified as having 9/11-related cancer through the World Trade Center Health Program.

12. Throughout his tenure, Plaintiff was an exceptional employee with close to 30 years of experience in the Information Technology field.

13. In or around May 2021, Plaintiff began working in Defendant's Records Department as a part-time Mainframe Programmer Consultant.

14. At the time of his hiring, Plaintiff, along with the rest of Defendant's workforce, worked remotely from their homes due to the COVID-19 pandemic.

15. In or around December 2021, Plaintiff was offered a full-time job with another company, but was asked by his direct manager, Defendant's Vice President and Project Manager, Ms. Jeybalan Sakkaravarthy, to continue working for Defendant. Thereafter, Defendant offered Plaintiff a full-time employee position.

16. On January 1, 2022, Defendant hired Plaintiff full-time as a "Senior Programmer Analyst."

17. As a Senior Programmer Analyst, Plaintiff undertook a range of technical and analytical responsibilities essential to supporting and maintaining financial applications such as coding, debugging, and optimizing software, and conducting thorough testing processes to identify and resolve IT issues. He regularly worked on multiple projects without any issues.

18. In or around April 2022, Defendant implemented a hybrid work policy requiring Plaintiff and other employees to return to the office once per week. Defendant later changed the policy to require employees to return to the office twice per week.

19. In or around July 2022, Plaintiff received a positive mid-year performance evaluation.

20. In or around October 2022, Plaintiff was diagnosed with cancer and began receiving chemotherapy treatment at Memorial Sloan Kettering Cancer Center.

21. Plaintiff's treating physician provided him with a letter to Defendant requesting a fully remote work arrangement for six months as an accommodation because individuals undergoing chemotherapy can become more susceptible to infections that can prolong recovery time and, in some instances, can be fatal.

22. Plaintiff was at risk of potentially life-threatening complications if he were to contract COVID-19 during his commute to or from work, or while working in the office.

23. The remote work accommodation that Plaintiff requested was reasonable and necessary because of the impact that chemotherapy had on Plaintiff's immune system.

24. Plaintiff gave Ms. Sakkaravarthy the treating physician's letter requesting the accommodation. She instructed Plaintiff to submit the letter to Defendant's Human Resources department ("HR"), which he subsequently did.

25. In or around October 2022, HR granted Plaintiff an accommodation that allowed him to work remotely for six months.

26. After Plaintiff began working remotely under the accommodation, Ms. Sakkaravarthy changed her behavior toward Plaintiff, including cancelling their weekly remote one-on-one meetings.

27. In or around December 2022, as part of Plaintiff's end-of-year review, Ms. Sakkaravarthy gave Plaintiff a negative end-of-year review telling him that he was only partially meeting expectations and needed improvement. This surprised Plaintiff because he had

continued to produce high-quality work while undergoing cancer treatment and had never been given a negative review while employed by Defendant. Further, Ms. Sakkaravarthy's review did not address Plaintiff's actual job performance.

28. Prior to this negative end-of-year review in or around December 2022, no one employed by Defendant had told Plaintiff that he was not meeting the requirements of his job.

29. Prior to this negative end-of-year review in or around December 2022, no one employed by Defendant had given Plaintiff a negative performance review.

30. As a result of the negative end-of-year review, in or around December 2022, Plaintiff was denied a year-end raise.

31. In or around March 2023, Plaintiff's treating physician advised him that he would need to continue working remotely as he was still immunocompromised due to his ongoing cancer treatment.

32. Plaintiff was afraid that requesting an accommodation to continue working remotely would make Ms. Sakkaravarthy angry.

33. In order to prevent additional hostility from Ms. Sakkaravarthy, Plaintiff asked his treating physician to revise the accommodation to allow him to work in the office two days per month.

34. Plaintiff's treating physician prepared a request for an accommodation to work remotely, with the exception of two days per month in the office.

35. In or around March 2023, Plaintiff submitted a second accommodation request by providing his physician's letter to HR, thereby requesting to continue the remote work accommodation, except for two days per month when he would come into the office.

36. After Plaintiff submitted the second accommodation request to HR, Ms. Sakkavarthy and her manager, Phil Care, scheduled a video call with Plaintiff to discuss it.

37. Ms. Sakkavarathy and Mr. Care appeared upset with Plaintiff's second accommodation request. Ms. Sakkavarathy and Mr. Care stated they would approve the continued remote work accommodation but would call Plaintiff every month to check on his improvement and to see if he could return to the office full-time sooner.

38. Mr. Care said he was unaware of the physician's note that was provided to HR. Plaintiff responded that he could provide this information to both Mr. Care and Ms. Sakkavarthy.

39. Plaintiff emailed Ms. Sakkaravarthy and Mr. Care the physician's letter, requesting that Defendant extend Plaintiff's remote work accommodation, allowing Plaintiff to work remotely all but two days per month.

40. Defendant approved Plaintiff's second accommodation request allowing him to work remotely all but two days per month.

41. During monthly "check-in" calls and in face-to-face interactions in the office, Plaintiff repeatedly explained to Ms. Sakkavarthy that, despite wearing a mask, being exposed to others while traveling and in the office still posed a dangerous and potentially life-threatening risk to his health.

42. Ms. Sakkaravarthy and Mr. Care were hostile to Plaintiff because of his cancer diagnosis, treatment, and the accommodations he was granted.

43. On the occasions that Plaintiff would go into the office, Ms. Sakkaravarthy and Mr. Care would ignore him and would not communicate with him.

44. On June 26, 2023, Mr. Care communicated to Plaintiff that he was being terminated.

45. Plaintiff was terminated after he requested and received a second accommodation for his disability, after facing hostility and anger from Ms. Sakkaravarthy and Mr. Care, and after Ms. Sakkaravarthy and Mr. Care pressured him to return to the office sooner than allowed by the remote work accommodation.

46. Plaintiff felt offended, disturbed, and humiliated by his blatantly unlawful and discriminatory termination.

47. Defendant's actions and conduct were intentional and aimed at harming Plaintiff.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced emotional distress.

49. On April 2, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was within 300 days of the acts and omissions at issue.

50. On November 5, 2024, Plaintiff received his Notice of Right to Sue from the EEOC, and he filed this action less than 90 days later.

51. This action is timely, and Plaintiff has exhausted all administrative remedies prior to filing this action.

## COUNT 1 – DISABILITY DISCIMINATION UNDER THE ADA
### 42 U.S.C. § 12112

52. Plaintiff realleges and incorporates all preceding paragraphs.

53. The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of a disability in regard to job application procedures, the hiring,

advancement, or discharge of employes, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

54. Defendant is a covered employee under the ADA. 42 U.S.C. §§ 12111(2), (5)(A).

55. Plaintiff's diagnosis with cancer, and the adverse side effects of his daily chemotherapy medication, meet the definition of "disability" under the ADA. 42 U.S.C. § 12102.

56. Plaintiff was a "qualified individual" under the ADA because he was able to perform the essential functions of his job with or without reasonable accommodation. 42 U.S.C. § 12111(8).

57. Defendant, through its agents or employees, discriminated against Plaintiff based on his disability when, among other things:

   a. Defendant denied Plaintiff a raise because of the discriminatory negative end-of-year performance review in December 2022;

   b. Defendant wrongfully terminated Plaintiff in June 2023, after he requested and received a second accommodation for his disability, after facing hostility and anger from Ms. Sakkaravarthy and Mr. Care, and after Ms. Sakkaravarthy and Mr. Care pressured him to return to the office sooner than allowed by the remote work accommodation.

58. Defendant's conduct violated Plaintiff's rights under the ADA and caused Plaintiff to suffer economic and non-economic harm, and he is entitled to recover damages, costs, and attorney's fees under the ADA. 42 U.S.C. §§ 12117, 2000e-5(g)(1), 2000e-5(k).

59. Defendant, through its agents and employees, engaged in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is

therefore liable for punitive damages pursuant to 42 U.S.C. §§ 1981a(a)(2),(b)(1) in an amount sufficient to punish and to deter it and other employers from engaging in similar conduct.

## COUNT 2 – INTERFERENCE UNDER THE ADA
### U.S.C. § 12203

60. Plaintiff realleges and incorporates all preceding paragraphs.

61. The ADA makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

62. Plaintiff engaged in protected activity under the ADA when he requested and was granted a reasonable accommodation to work remotely due to his cancer treatment and immunocompromised condition.

63. Defendant, through its agents or employees, engaged in coercive and intimidating conduct, thereby interfering with Plaintiff's exercise of his reasonable accommodation when, among other things:

   a. Defendant's behavior leading up to Plaintiffs accommodation request in March 2023 pressured Plaintiff to alter his physician's recommended accommodation of fully remote work to an in-office schedule of two days per month, thereby interfering with Plaintiff's right to request a reasonable accommodation under the ADA.

   b. Defendant scheduled a video call with Plaintiff in March 2023, during which Ms. Sakkaravarthy and Mr. Care criticized Plaintiff for submitting his second accommodation request directly to HR, creating an intimidating and hostile environment around the accommodation process.

       c. Defendant required Plaintiff to participate in monthly "check-in" calls with Ms. Sakkaravarthy, during which she repeatedly pressured Plaintiff to return to the office full-time, despite his medical need for limited in-office work as outlined in his accommodation.

64. The materially adverse actions Plaintiff alleges herein directly and proximately caused Plaintiff to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, intimidation, embarrassment, and frustration. Plaintiff is therefore entitled to recover damages, costs, and attorney's fees under the ADA. 42 U.S.C. §§ 12203(c), 12117, 12205, 2000e-5(g)(1), 2000e-5(k).

65. Defendant, through its agents or employees, retaliated against Plaintiff with malice and reckless indifference to his federally protected rights. Defendant is therefore liable for punitive damages pursuant to 42 U.S.C. §§ 1981a(a)(1), (b)(1) in an amount sufficient to punish and to deter it and other employers from engaging in similar conduct.

## COUNT 3 – DISABILITY DISCRIMINATION UNDER NYSHRL
### N.Y. Exec.Law § 296

66. Plaintiff realleges and incorporates all preceding paragraphs.

67. The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice" "[f]or an employer . . . because of an individual's . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

68. Defendant is a covered employer under the NYSHRL. N.Y. Exec. Law § 292(5).

69. Plaintiff's diagnosis with cancer, and the adverse side effects of his daily chemotherapy medication, meets the definition of a "disability" under the NYSHRL. N.Y. Exec. Law § 292(21).

70. Defendant, through its agents or employees, discriminated against Plaintiff based on his disability when, among other things:

   a. Defendant denied Plaintiff a raise because of the negative end-of-year performance review in December 2022.

   b. Defendant wrongfully terminated Plaintiff in June 2023, after he requested and received a second accommodation for his disability, after facing hostility and anger from Ms. Sakkaravarthy and Mr. Care, and after Ms. Sakkaravarthy and Mr. Care pressured him to return to the office sooner than allowed by the remote work accommodation.

71. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial. Plaintiff also has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and other incidental consequential damages and expenses in an amount to be proved at trial. Plaintiff is therefore entitled to recover damages, including punitive damages, costs, and attorney's fees under the NYSHRL. N.Y. Exec. Law §§ 297(9), (10).

### COUNT 4 – AIDING AND ABETTING UNDER THE NYSHRL
**N.Y. Exec. Law § 296(6)**

72. Plaintiff realleges and incorporates all preceding paragraphs.

73. The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the anti-discrimination provisions of the NYSHRL], or to attempt to do so." N.Y. Exec. Law § 296(6).

74. Defendant violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the discriminatory acts of its agents and employees by engaging in the following actions, among others:

   a. Defendant denied Plaintiff a raise and year-end bonus in December 2022, a decision made after his request for an accommodation;,

   b. Defendant wrongfully terminated Plaintiff in June 2023, after he requested and received a second accommodation for his disability, after facing hostility and anger from Ms. Sakkaravarthy and Mr. Care, and after Ms. Sakkaravarthy and Mr. Care pressured him to return to the office sooner than allowed by the remote work accommodation.

75. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer substantial losses, benefits in an amount to be proved at trial. Plaintiff also has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and other incidental consequential damages and expenses in an amount to be proved at trial. Plaintiff is therefore entitled to recover damages, including punitive damages, costs, and attorney's fees under the NYSHRL. N.Y. Exec. Law §§ 297(9), (10).

## COUNT 5 – DISABILITY DISCRIMINATION UNDER THE NYCHRL
### N.Y.C. Admin. Code § 8-107(1)

76. Plaintiff hereby incorporates all preceding paragraphs.

77. The NYCHRL provides that "[i]t shall be unlawful discriminatory practice" "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person . . .[t]o refuse to hire or employ or to bar or to discharge from employment such

person" or "[t]o discriminate against such person in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1),(a).

78. Defendant is a covered employer under the NYCHRL. N.Y.C. Admin. Code § 8-102.

79. Plaintiff's diagnosis with cancer, along with the adverse side effects of his daily chemotherapy medication, meets the definition of "disability" under the NYCHRL. N.Y.C. Admin. Code § 8-102.

80. Defendant, through its agents or employees, discriminated against Plaintiff based on his disability when, among other things:

a. Defendant denied Plaintiff a raise because of the negative performance review in December 2022;

b. Defendant wrongfully terminated Plaintiff in June 2023, after he requested and received a second accommodation for his disability, after facing hostility and anger from Ms. Sakkaravarthy and Mr. Care, and after Ms. Sakkaravarthy and Mr. Care pressured him to return to the office sooner than allowed by the remote work accommodation.

81. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial. Plaintiff also has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and other incidental consequential damages and expenses in an amount to be proved at trial. Plaintiff is therefore

entitled to recover damages, including punitive damages, costs, and attorney's fees under the NYCHRL. N.Y.C. Admin. Code §§ 8-502(a), (g).

## COUNT 6 – INTERFERENCE UNDER NYCHRL
### N.Y.C. Admin. Code § 8-107(19)

82. Plaintiff hereby incorporates all preceding paragraphs.

83. The NYCHRL provides that "i[i]t shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of . . . any right granted or protected pursuant [the anti-discrimination provisions of the NYCHRL]." N.Y.C. Admin. Code § 8-107(19).

84. Defendant, through its agents or employees, engaged in coercive and intimidating conduct, thereby interfering with Plaintiff's exercise of his reasonable accommodation when, among other things:

   a. Defendant's behavior leading up to Plaintiffs accommodation request in March 2023, pressured Plaintiff to alter his physician's recommended accommodation of fully remote work to an in-office schedule of two days per month, thereby interfering with Plaintiff's right to request a reasonable accommodation under the ADA.

   b. Defendant scheduled a video call with Plaintiff in March 2023, during which Ms. Sakkaravarthy and Mr. Care criticized Plaintiff for submitting his second accommodation request directly to HR creating an intimidating and hostile environment around the accommodation process.

   c. Defendant required Plaintiff to participate in monthly "check-in" calls with Ms. Sakkaravarthy, during which she repeatedly pressured Plaintiff to return to the

office full-time, despite his medical need for limited in-office work as outlined in his accommodation.

85. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial. Plaintiff also has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and other incidental consequential damages and expenses in an amount to be proved at trial. Plaintiff is therefore entitled to recover damages, including punitive damages, costs, and attorney's fees under the NYCHRL. N.Y.C. Admin. Code §§ 8-502(a), (g).

## COUNT 7 - AIDING AND ABETTING UNDER THE NYCHRL
### N.Y.C. Admin. Code § 8-107(6)

86. Plaintiff hereby incorporates all preceding paragraphs.

87. The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the anti-discrimination provisions of the NYCHRL], or to attempt to do so." N.Y.C. Admin. Code § 8-107(6)by engaging in the following actions, among others:

   a. Defendant denied Plaintiff a raise and year-end bonus in December 2022, a decision made after his request for an accommodation.

   b. Defendant wrongfully terminated Plaintiff in June 2023, after he requested and received a second accommodation for his disability, after facing hostility and anger from Ms. Sakkaravarthy and Mr. Care, and after Ms. Sakkaravarthy and Mr. Care pressured him to return to the office sooner than allowed by the remote work accommodation.

    c. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial. Plaintiff also has suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and other incidental consequential damages and expenses in an amount to be proved at trial. Plaintiff is therefore entitled to recover damages, including punitive damages, costs, and attorney's fees under the NYCHRL. N.Y.C. Admin. Code §§ 8-502(a), (g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Seiran Salimov prays for:

1. Judgment against The Bank of New York Mellon Corporation on Counts I-VII of his Complaint;

2. A finding that Plaintiff has been subjected to unlawful discrimination based on his disability under the ADA, the NYSHRL, and the NYCHRL;

3. A finding that Plaintiff has been subjected to interference in the exercise of his reasonable accommodation based on Defendant's coercive and intimidating conduct under the ADA and the NYCHRL;

4. A finding that Defendant aided and abetted the coercing and discriminatory acts of its agents and employees under the NYSHRL and NYCHRL;

5. Relief in the form of compensatory damages, including back pay, front pay, emotional distress damages, and any other allowable compensatory damages under the

statutes; liquidated damages; punitive damages; equitable relief; costs expended; and reasonable attorney's fees; and

6.       Any further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Date: December 16, 2024

**HKM EMPLOYMENT ATTORNEYS LLP**

*/s/Artemio Guerra*
Artemio Guerra
153 Main St, Suite 201
New Paltz, NY 12561
Tel: 212-439-5127
aguerra@hkm.com